IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Companion Property & Casualty Insurance Company, | ) ) ) | C/A No.: 3:12-cv-1529-JFA |
| Plaintiff, | ) ) | |
| vs. | ) ) | ORDER |
| GTE Federal Credit Union, | ) ) | |
| Defendant. | ) ) ) | |

This matter comes before the court on Defendant GTE Federal Credit Union's ("GTE") Motion to Dismiss for Lack of Jurisdiction or, in the Alternative, Motion to Transfer Venue. (ECF No. 7). Plaintiff Companion Property & Casualty Insurance Company ("Companion") opposes the motion. For the reasons that follow, this court grants Defendant's Motion to Dismiss.

**I.     Factual and Procedural History**

The contractual relationship between these parties began in 2008 when Companion, a South Carolina corporation with its principal office in Columbia, South Carolina, issued an Equity Protection Policy ("the Policy") to GTE, a credit union with offices in Tampa, Florida. In 2009 and 2010, GTE experienced significant losses in the loan portfolio insured under the Policy. Because of the losses, Companion determined in the fall of 2010 that it could no longer afford to provide the coverage set out in the Policy and to continue paying claims in exchange for the premium rates that existed at the time. Because of this, Companion informed GTE that it intended to cancel the policy.

1

However, GTE did not want Companion to terminate the policy and was willing to pay increased premiums to avoid the cancellation. To reach an agreement that they were both comfortable with, the parties entered into negotiations, which culminated in the Third Service Agreement dated February 1, 2011. In addition to other provisions, including a higher premium rate, the Third Service Agreement states that the parties "may not cancel this agreement without cause."

On January 23, 2012, John Trujillo, vice president of GTE, wrote a letter to Companion stating that GTE intended to cancel the policy effective January 23, 2012. GTE then wrote a second letter to Companion stating that the termination of the policy was to be effective February 23, 2012. On April 23, 2012, Companion filed this declaratory judgment action against GTE in the Richland County Court of Common Pleas seeking a declaration that the insurance policy issued by Companion to GTE remains in full force and effect because GTE has not cancelled the Policy for cause as required by agreement of the parties. On May 11, 2012, GTE filed a declaratory judgment action against Companion in the Middle District of Florida seeking a declaration that GTE has validly terminated the insurance policy with Companion. GTE removed the instant case to federal court on June 8, 2012.

Presently pending before this court is GTE's Motion to Dismiss for Lack of Jurisdiction, or, in the Alternative, Motion to Transfer Venue. (ECF No. 7). Companion filed a Response in Opposition to Defendant's motion (ECF No. 9), and GTE has responded to Companion's arguments in a reply brief (ECF No. 15).

## II. Legal Standard for Motion to Dismiss

A federal court may exercise personal jurisdiction over a "foreign corporation if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." *Consult. Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009); Fed. R. Civ. P. 4(k)(1)(A). Because South Carolina courts have consistently construed the South Carolina long-arm statute to extend to the outer reaches of the Fourteenth Amendment, the court's statutory inquiry merges with its constitutional inquiry. *See Cockrell v. Hillerich & Bradsby Co.*, 611 S.E.2d 505, 508 (S.C. 2005); *see also Geometric*, 561 F.3d at 277. The Fourteenth Amendment requires sufficient "minimum contacts" with the forum such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945). If the defendant's contacts with the forum give rise to the basis of the suit, those contacts may provide the basis to establish what is referred to as specific jurisdiction.

## III. Analysis

### A. Dismissal

#### 1. Personal Jurisdiction – Minimum Contacts

Defendant submits that there are not sufficient minimum contacts in this case such that this court has personal jurisdiction over GTE. In the specific jurisdiction context, minimum contacts means: (1) that defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) that the plaintiff's claims arise out of

3

those activities directed at the state; and (3) that exercise of the court's jurisdiction over the defendant would be constitutionally reasonable. *Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 397 (4th Cir. 2003).

As to whether GTE has purposefully availed itself of the privilege of conducting business in South Carolina, GTE points out the following:

- it does not maintain offices or agents in South Carolina;
- it does not own property in South Carolina;
- it takes no action to solicit or initiate business within South Carolina, and it has never done so;
- the parties' contract does not contain a venue provision;
- no one from GTE has ever traveled to South Carolina to meet with agents of Companion;
- while Companion's office are located in South Carolina, the insurance at issue was sold to GTE in Florida by a Florida-licensed broker and subject to the laws of the state of Florida.

For all of the above reasons, GTE submits that it has not purposefully availed itself of conducting business in South Carolina. GTE additionally contends that the fact that payments on the contract may have been sent to South Carolina is insufficient to justify the exercise of personal jurisdiction. (ECF No. 7, p. 8 (citing *Coggeshall v. Reproductive Endocrine Assocs. of Charlotte*, 655 S.E.2d 476, 480–81 (S.C. 2007))).

4

Companion disagrees with GTE's contentions and submits that "GTE has purposefully availed itself of the privilege of conducting business in South Carolina by entering into a contract with a South Carolina corporation to be performed in whole or in part in South Carolina." (ECF No. 9, p. 7). Companion provides the following facts that support its assertion:

- Companion fulfilled its contractual obligations from South Carolina, including processing payments, receiving claims, and issuing checks to GTE;
- the parties communicated about the policy by calling or emailing one another;
- GTE negotiated the Third Service Agreement and other service agreements before that with Companion, a South Carolina corporation.

According to Companion, this is much different from the situation where an ordinary insured is haled into court simply because they purchased insurance from a corporation organized under the laws of another state. GTE is a sophisticated insured who negotiated a multi-million dollar contract, and it should be subject to personal jurisdiction in South Carolina.

In its Reply brief, GTE provides further information about the general services it received under the Policy and about the multiple service agreements that were negotiated between the parties. Apparently, DGU Insurance Associates, LLC ("DGU"), a "servicing agent," performed most, if not all of the services required to be performed under the Policy. DGU is a Florida limited liability company with its principal place of business in Sarasota, Florida. GTE contends that DGU was responsible for processing and

underwriting all claims under the Policy, and Companion merely issued checks to GTE. Additionally, when the Third Service Agreement between GTE and Companion was negotiated, the negotiations took place in Tampa, Florida between DGU, Allied (insurance broker), and GTE. The CFO of Companion conferenced separately with DGU via telephone earlier on the same day that the negotiations took place.

This court agrees with the Defendant that it has not purposely availed itself of the benefits and privileges of conducting business in South Carolina. Moreover, the payments that GTE mailed to Companion and the checks that GTE received from Companion are not sufficient to show purposeful availment. Because this court determines that the first prong of the minimum contacts analysis has not been met, the court does not evaluate the remaining two prongs.

After reviewing the relationship between Companion and GTE, this court finds that there are not sufficient minimum contacts in this case such that specific jurisdiction exists in South Carolina. Because this court cannot properly exercise personal jurisdiction over the Defendant, the court grants Defendant's motion to dismiss.

### 2.     Forum Shopping

Though it has already determined that dismissal is appropriate in this case, the court briefly addresses Defendant's forum shopping assertion. Under the first-filed rule, when two parallel actions are pending in two different forums, the court "gives priority to the first suit filed absent a balance of convenience favoring the second filed." *Nexsen Pruet, LLC v. Westport Ins. Corp.*, No. 3:10-895-JFA, 2010 WL 3169378 at *2 (D.S.C. Aug. 5, 2010) (citations omitted).

GTE argues that this case should be dismissed because by filing this declaratory judgment action in South Carolina, Companion has engaged in impermissible forum shopping. In particular, GTE submits that at the time that Companion filed this suit, it was "lulling GTE into inaction by sending correspondence ostensibly concerning resolution of claims." (ECF No. 7, p. 11). Filing a preemptive action in the midst of settlement discussions, is exactly the type of special circumstances that courts within the Fourth Circuit have recognized as an exception to the first-filed rule. *See Seithel v. Feldman & Pinto, P.A.*, No. 2:11-cv-1854-PMD, 2011 WL 4597367, *1 (D.S.C. Oct. 3, 2011) (finding that "[a]mong the special circumstances that would permit a departure from the first-filed rule is the instance where an action was filed in the midst of settlement negotiations").

Companion disagrees that it improperly filed this suit in the midst of settlement negotiations; rather, Plaintiff submits that the parties were engaged in pre-suit discussions initiated by Companion prior to filing suit, in which the parties exchanged information regarding the facts and the respective positions of the parties relative to the Policy. Companion contends that it has not engaged in either forum shopping or procedural fencing.[1] In addition to having priority as the first to file, Companion asserts that the balance of convenience weighs in its favor as South Carolina has an interest in having

---

[1] There is a difference between forum shopping and procedural fencing. "Forum shopping occurs when a litigant selects a forum with only a slight connection to the factual circumstances of the action, or where forum shopping alone motivated the choice." *Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505, 513 (S.D.N.Y. 2004). "Procedural fencing occurs when . . . 'a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum.'" *Riley v. Dozier Internet Law, P.C.*, 371 F. App'x 399, 403 (4th Cir. 2010) (quoting *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 212 (4th Cir. 2006)).

7

local controversies decided at home. Because both sides have documents and witnesses in their respective states, GTE cannot establish that Florida is the more convenient forum.

After reviewing the parties' communications, this court finds that GTE was not "lulled" by Companion into settlement negotiations and then suddenly surprised with this lawsuit. The communications between counsel in this case indicate that there was an understanding between both sides that litigation was a possibility. As such, the court declines to find that Plaintiff engaged in forum shopping or procedural fencing in filing this suit.

### B. Transfer

As an alternative to dismissal, GTE urged in its motion that this case should be transferred to the Middle District of Florida where it can be consolidated with *GTE Federal Credit Union v. Companion Property & Casualty Insurance Company*, Case No. 8:12-cv-1064-JSM-TBM. Because the court determined that dismissal is appropriate in this case, the court does not reach the theory of transfer.

## IV. Conclusion

As discussed above, this court finds that it does not have personal jurisdiction in this case. Accordingly, the court grants Defendant's Motion to Dismiss (ECF No. 7) and dismisses this action.

IT IS SO ORDERED.

September 4, 2012                                  Joseph F. Anderson, Jr.
Columbia, South Carolina                           United States District Judge

8